UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| JOSEPH BARNES, | ) | |
| | ) | |
| Plaintiff, | ) | 13-432-GFVT |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| CAROLYN W. COLVIN, Acting | ) | **ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The plaintiff, Joseph Barnes, seeks judicial review pursuant to 42 U.S.C. §§ 405(g), of an administrative decision of the Commissioner of Social Security ("Commissioner") denying his applications for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI"). For the reasons stated herein, the Court will deny Barnes' Motion for Summary Judgment [R. 29], and grant that of the Commissioner [R. 30].

**I**

Joseph Barnes, who was thirty-years old at the time of his alleged disability onset date, suffers from a bipolar and mood disorder. [Tr. 11.] Barnes reports that he is paranoid and anxious around people and does what he can to avoid crowds. He has a high-school education with some college and has expressed interest in returning for more education. [Tr. 14.] Barnes has been married twice, but neither marriage lasted long. [*Id*.] He has a fairly extensive work history although none of his jobs last for long, and while not an occupation, Barnes' workout routine is rigorous, weightlifting almost as if it is his job. [*Id*.] On August 29, 2012, Barnes

applied for benefits, alleging a disability onset date of October 31, 2010. [Tr. 175-191.] After Barnes applications were denied initially and upon reconsideration [Tr. 55-78, 79- 104], Barnes requested a hearing which was conducted before Administrative Law Judge ("ALJ") Donald Paris. [Tr. 23-54.] At that hearing, the ALJ heard testimony from Barnes, and from Betty Hale, a vocational expert. [*Id*.] On August 22, 2013, ALJ Paris issued a decision denying benefits. [Tr. 9-18.]

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. § 404.1520.[1] First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." 20 C.F.R. § 404.1520(d). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairments experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R.

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

§ 404.1545. Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). The plaintiff has the ultimate burden of proving compliance with the first four steps. *Kyle v. Comm'r Of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled." 20 C.F.R. § 404.1520(f).

In this case, the ALJ determined, at Step 1, that Barnes had not engaged in substantial gainful activity since the alleged disability onset date. [Tr. 11.] At Step 2, the ALJ found that Barnes' "mood and/or bipolar disorder" qualified as severe impairments. [*Id*.] At Step 3, the ALJ concluded that Barnes did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)," so the analysis continued to the next step. [Tr. 12.] Next, the ALJ concluded that Barnes had a residual functional capacity (RFC) to "perform a full range of work at all exertional levels," but has the following "mental-based non-exertional limitations":

> He can complete simple 2-3 step commands and some complex instructions. He can maintain attention and concentration, for at least two hours at a time as required to perform simple tasks, sufficiently to complete an eight-hour workday and forty-hour workweek. The claimant has the ability to interact appropriately on a consistent basis with others. Contact with others should be casual. Supervision should be direct. The claimant is able to adapt to routine changes and respond to directions from others. Changes in the work environment should be gradually introduced.

3

[Tr. 13.] At Step 4, the ALJ found that the Barnes has no relevant past work.[2] [Tr. 16.] At Step 5, after "[c]onsidering Barnes' age, education, work experience, and residual functional capacity," the ALJ decided that "there are jobs that exist in significant numbers in the national economy that [Barnes] can perform." [Tr. 17.] Barnes appealed on October 30, 2013, but the Appeals Council found no reason to upset the ALJ's decision [Tr. 1-4], and Barnes now seeks judicial review in this Court.

**II**

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (*citing Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not

---

[2] The ALJ noted that Barnes did have a history of "many short-term jobs," including one three month stint at a bank where Barnes was paid wages suggestive of substantial gainful activity. [Tr. 16.] Nevertheless, the ALJ did not consider this past relevant work out of a desire to give Barnes "every reasonable inference." [*Id.*]

conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citation omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

A

Barnes challenges the ALJ's RFC assessment. His first, and primary, argument is that the ALJ's decision to give little weight to the opinions of Nurse Landry and Dr. O'Neill, while giving great weight to the opinions of State Agency Psychological Consultant Dr. Mark Gilson "stood [the] process on its head." [R. 29-1 at 10-14.] Instead, he believes the ALJ should have given controlling weight to Nurse Landry's opinion that Barnes had "no useful ability" to "deal with work stresses." [*Id*. at 11.] In a related argument, Barnes argues that the ALJ erred by not providing "good reasons" for discounting Nurse Landry's opinions. [*Id*. at 11.] Finally, Barnes claims it was error for the ALJ to give Dr. Gilson's opinion great weight because Gilson did not have all of Nurse Landry's notes when preparing his report. [*Id*. at 5; R. 32 at 4.]

1

When determining whether a claimant is disabled, the Commissioner considers "medical opinions in [the] case record together with the rest of the relevant evidence [they] receive." 20 C.F.R. § 404.1527; § 404.1520b. In this case, it is particularly important to distinguish between two different varieties of opinion evidence: opinions from *acceptable medical sources* and opinions from *other sources*. *See* SSR 06-03p (2006). Statements from "*acceptable medical*

*sources* that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions" are called *medical opinions*. 20 C.F.R. § 404.1527(a); 20 C.F.R. § 416.927(a)(2). When deciding how much weight to give a medical opinion, the Commissioner considers: (1) the nature of the examining relationship, (2) the nature of the treating relationship, (3) the supportability of the source's opinion, (4) the opinion's consistency with the record as a whole, (5) the doctor's degree of specialization, and (6) any other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c); § 416.927(e); *see also* SSR 96–6p at *2–*3.

As a general rule, *treating source opinions* (a subset of "medical opinions") are given more weight than those opinions of non-treating sources:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2); § 404.927(c)(2) . If the treating source's opinion is not given controlling weight, then the ALJ is required to consider the above described factors in deciding exactly how much weight it is to be given, and then include "good reasons" in his decision for not giving the opinion controlling weight. *See* 20 C.F.R. § 404.1527(c)(2)(i-ii), (c)(3-6); § 416.927(c)(2)(i-ii), (c)(3-6); *Turner v. Comm'r of Soc. Sec.*, 267 F. App'x 456, 460 (6th Cir. 2008); *Wilson,* 378 F.3d at 544. The purpose of this "good reason rule" is to "let claimants understand the disposition of their cases," to "ensure[] that the ALJ applies the treating physician rule," and to "permit[] meaningful review of the ALJ's application of the rule." *Wilson,* 378 F.3d

at 544 (*citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5; *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999); *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)); *see also* ALJ's also consider the above discussed factors when deciding how much weight to give the opinions of *non-examining sources* (another subset of "medical opinions"), including state agency medical and psychological consultants— "highly qualified physicians ... who are also experts in Social Security disability evaluation," and whose findings and opinions the ALJ "must consider ... as opinion evidence."  *Lee v. Comm'r. of Soc. Sec.,* 529 Fed. Appx. 706, 712 (6th Cir. 2013) (*citing* 20 C.F.R. § 404.1527(e)(2)(i)); *see also Leach v. Comm'r. of Soc. Sec.,* 2013 U.S. Dist. LEXIS 108858, *39 (E.D. Mich. June 11, 2013); SSR 96-6P (S.S.A. July 2, 1996).

In addition to evidence from *acceptable medical sources*, the Commissioner "may also use evidence from *other sources* to show the severity of [a claimant's] impairment(s) and how it affects [their] ability to work.  20 C.F.R. § 404.1513(d)(1) (emphasis added).  Such "other sources" might include nurse-practitioners, physicians' assistants, school teachers, counselors, social welfare agency personnel, spouses, parents, siblings, other relatives, friends, neighbors, or clergy, just to name a few.  *Id.*  Unlike evidence supplied by medical sources, which may be used to establish the existence of a disability, *see* 20 C.F.R. § 404.1513, evidence from other sources may only be used "to show the severity of [the claimant's] impairment(s) and how it affects [their] ability to work."  20 C.F.R. § 404.1513(d); SSR 06-03p.  Other sources' "perspective[s] should be given weight by the adjudicator and should be 'evaluated on key issues such as impairment severity and functional effects, along with the other evidence in the file.'"  *Engebrecht*, 572 F. App'x 392, 397-98 (6th Cir. 2014) (quoting *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 541 (6th Cir. 2007) (*citing* SSR 06–03P).

7

Finally, and importantly, it is the responsibility of the ALJ, not the claimant, to weigh the evidence of record. *See Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988) ("Although the record is replete with inconsistent medical reports and [the Claimant's] own conflicting testimony, we acknowledge the discretion vested in the ALJ to weigh all the evidence.") (*citing Myers v. Richardson,* 471 F.2d 1265 (6th Cir. 1972); *Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987)); *see also Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")

**2**

In the case at hand, the ALJ considered the opinions of four different medical personnel: Dana Landry, a nurse practitioner; Dr. Maude O'Neill, a consultative examiner; Dr. Mark Gilson, a state agency psychological consultant; and Dr. Ann Demaree, a state agency medical consultant.[3]

Dr. O'Neill examined Barnes only once, on November 21, 2012. [Tr. 15, 270-274.] The ALJ summarized O'Neill's findings as follows:

> The claimant alleged bipolar disorder. He reported last working in October 2010. The claimant appeared mildly sad. Dr. O'Neill termed him impulsive, with mildly pressured speech, and the claimant reported paranoia and low self-esteem. He performed well on simple calculation, basic knowledge and concentration. The claimant could think abstractly. He gave a history of remote suicide attempts in 2006 and 2009 respectively. He told Dr. O'Neill that he remained in solitude most of the time. He was paranoid that people talked about him. The claimant had recently married on an impulsive whim, and he had already separated. The claimant had abused drugs in the remote past, but not recently. Dr. O'Neill estimated average to above-average intelligence. The claimant was independent in self-care and routine chores, but poor at handling money. He had four close friends, but he was generally suspicious of others. Dr. O'Neill diagnosed bipolar

---

[3]   Dr. Murray West, the claimant's primary care physician saw the claimant for some laboratory abnormalities related to Barnes' bodybuilding activities. [Tr. 15.] The existence of Dr. West's opinions and medical records were only noted by the ALJ, and are not pertinent to the issues currently before the Court.

8

>disorder. She assigned a global assessment of function (GAF) score of 45, indicating serious symptoms. Dr. O'Neill assigned "marked" impairment in adapting and responding to work pressures. She assigned moderate impairment in social interaction, mild impairment in attention/persistence, and no impairment in understanding/remembering simple instructions.

[Tr. 15, 270-274.]

On December 17, 2012, state agency psychological consultant Dr. Mark Gilson completed an assessment of Mr. Barnes. [Tr. 15, 57-78.] As explained by the ALJ, Dr. Gilson concluded that Barnes could complete simple 2-3 step commands, maintain attention and concentration for simple tasks, adapt to routine changes when gradually introduced, respond to directions, and interact appropriately with others, although Barnes' contact with others should be casual and non-confrontational. [Tr. 15 (*citing* Tr. 63-64, 74-75).] State agency medical consultant Dr. Ann Demaree agreed with Dr. Gilson's assessment. [Tr. 15, 81-104.] The ALJ adopted the above discussed restrictions for his own RFC.

Finally, Nurse Practitioner Dana Landry had the longest lasting treatment relationship with Barnes. The case record includes Landry's notes from office visits in 2011-2013. [Tr. 14, 266-269, 281-287.] Nurse Landry completed a mental health assessment questionnaire on March 14, 2013, wherein she reports that Barnes has "poor or none" ability (meaning, "[n]o useful ability to function in this area") to deal with work stresses. [Tr. 281.] She further reported that he had a "fair" ability (meaning, "[a]bility to function in this area is seriously limited, but not precluded") to relate to co-workers, deal with the public, use judgment, and maintain attention/concentration. [*Id*.] According to Landry, Barnes was "good" (meaning, "[a]bility to function in this area is more than satisfactory") at following work rules, interacting with supervisors, functioning independently, and demonstrating reliability. [*Id*.] Barnes' present

9

arguments depend almost singly on the contents of this assessment and how much deference is to be given to Landry's opinion really goes to the heart of Barnes' objections.

Barnes argues that Landry's opinion should receive greater weight than the ALJ assigned it because of her status as "the long-term treating source." [R. 29-1 at 11.] He, in essence, asks that Landry's opinion receive the deference that would normally be given to opinions offered by a treating physician. This argument fails, however, because Landry is not a "treating source" within the meaning of the regulations. "[O]nly "acceptable medical sources" can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight. See 20 CFR 404.1527(d) and 416.927(d)." SSR 06-03P (S.S.A. Aug. 9, 2006); 20 C.F.R. § 404.1513 (Acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, or qualified speech-language pathologists.) Nurse practitioners are not "acceptable medical sources" but are instead "other sources." 20 C.F.R. § 404.1513(d)(1); *Cruse*, 502 F.3d at 541. The "ALJ has discretion to determine the proper weight to accord opinions from 'other sources'...." *Engebrecht,* 572 F. App'x at 398 (quoting *Cruse,* 502 F.3d at 541 (*citing Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 530 (6th Cir. 1997)).

Before discussing the ALJ's rationale, it is important to note that, contrary to Barnes' argument, the ALJ did not have to provide "good reasons" for discounting Nurse Landry's opinion since Landry was not an "acceptable medical source." *See* 20 C.F.R. § 404.1527(c)(2); *Burke ex rel. A.R.B. v. Astrue*, No. CIV.A. 6:07-376-KKC, 2008 WL 1771923, at *7 (E.D. Ky. Apr. 17, 2008) (Good reason rule does not apply when source is not an "accepted medical source.") Instead, "other source" opinions are evaluated using the same factors provided for the

evaluation of medical opinions, laid out in 20 CFR 404.1527 and 20 CFR 416.927, discussed *supra*. SSR 06-03P (S.S.A. Aug. 9, 2006).

The ALJ considered Nurse Landry's opinions and, in accordance with these factors, gave them more attention and deference than was required. For the most part, the ALJ adopted her opinion, but he rejected it on the critical question of how Barnes could manage workplace stress. The ALJ called into question both the supportability and consistency of her opinion, explaining that Landry's conclusion was neither consistent with the mental status examinations that she performed, nor was it consistent with Barnes' own report that he worked as a doorman during 2011 and 2012. [Tr. 16.] In the words of the ALJ, he was "struck by the series of mental status examination by Ms. Landry" that "continually show[ed] stable mood." [Tr. 15.] Barnes disputes this point but, contrary to Barnes assertions, over the course of the two years that Landry saw Barnes, her notes routinely indicated that he was doing well. Similar handwritten "assessments" appeared in January, May, and November of 2011, in May of 2012, in January and March of 2013, and in June of 2013. All reported either a "good," "stable" or "level" mood with these additional comments, "Affect Normal. Speech normal rate and rhythm. Thoughts linear and reality based. Casually groomed. Good hygiene." [Tr. 266, 267, 268, 269, 282, 283, 284, 287.] At one point, Landry even noted "Everything is going great." [Tr. 268.] A departure from this stable mood was the exception. Only in July of 2013 was Landry's assessment significantly different, recognizing that Barnes' mood was "depressed," but his affect was still normal, speech had a normal rate and rhythm, his thoughts were linear and reality based. [Tr. 286.] Notably, the assessment indicating depression did not inform Landry's psychological evaluation, which the ALJ took issue with, because the assessment took place months after the evaluation was completed. The clinical data that Landry documented paints a very mixed picture. Barnes

clearly has emotional problems and can be erratic as demonstrated by his periodic suicidal episodes and two short-term marriages but these events do not change the fact that over the course of nine different office visits, only once did Landry report that his mood was anything but good, stable or level and not one time in all those visits did she report that his affect was anything but normal, or that his thoughts were not based in reality.  The ALJ further noted that two of Landry's reports indicated that Barnes had been working during the time that she had been seeing him and the only stated reason that his work ceased was because the business closed down.  [Tr. 15, 267, 283.]

The ALJ also gave some weight to the opinion of Dr. O'Neill, who performed the November 21, 2012, consultative examination.  [Tr. 15-16.]  While the opinions of doctors who examine a claimant are generally given more weight than the opinions of non-examining sources, the opinion of a doctor who only examined a claimant once is not entitled to the same deference as that of a treating physician.  20 C.F.R. § 404.1527(c)(1); § 416.927(c)(1); *Smith v. Comm'r of Soc. Sec. Admin.*, 564 F. App'x 758, 763 (6th Cir. 2014).  Despite the fact that Dr. O'Neill's opinion was not entitled this deference, the ALJ still adopted the majority of Dr. O'Neill's opinions— that Barnes had a moderate limitation on interaction, a mild limitation with regard to attention and persistence, and no impairment on receiving simple instructions.  The ALJ did not adopt, however, Dr. O'Neill's finding that Barnes has a marked impairment in his ability to adapt to and respond to pressures associated with day-to-day work activities.  [Tr. 16, 274.]  The ALJ explained that this conclusion was, first, inconsistent with clinical reports, and, second, not well informed because O'Neill did not have complete information about Barnes 2011-2012 work history which Barnes had shared with Nurse Landry but kept from O'Neill.  [Tr. 16.]  While Barnes does not raise his credibility as an issue in his motion, the ALJ further found that Barnes'

unwillingness to share this employment information with O'Neill gave reason to doubt his credibility. [Tr. 16.]

ALJ Paris gave the greatest weight to the opinions of Drs. Gibson and Demaree because he concluded that their assessments were most consistent with the evidence as a whole. [Tr. 16.] Barnes challenges the ALJ's decision to give these opinions great weight because neither Drs. Gilson nor Demaree had access to Nurse Landry's psychological examination and treatment notes from November 16, 2012 through July 17, 2013 (Tr. 281-287) since those records post-dated the issuance of Gilson and Demaree's reports. [R. 29-1 at 5.]

This issue was addressed by the Sixth Circuit in *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009). In that case, the ALJ had adopted the findings of state agency physicians, and a state agency psychologist with only this justification: "[t]he finding that the claimant can perform a range of medium work is consistent with the opinion of the State Agency medical consultants." *Id*. The Court noted that the agency's non-examining sources had not reviewed over 300 pages of medical evidence, including ongoing treatment notes from the claimaint's treating sources. The Court recognized that "in appropriate circumstances, opinions from State agency medical ... consultants ... may be entitled to greater weight than the opinions of treating or examining sources," but that when those opinions are based on incomplete information, there must be at least "some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not 'based on a review of a complete case record.' " *Id*. at 409 (quoting *Fisk v. Astrue,* 253 Fed.Appx. 580, 585 (6th Cir.2007) (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *3)). Because the ALJ had provided no such indication, the Court remanded.

13

For a few reasons, a similar remand is not appropriate here.  First, in *Blakely*, over 300 pages of medical evidence had been ignored.  In the case at hand, the only evidence the state agency examiners did not have to access to were Landry's notes from November 16, 2012 through July 17, 2013 (Tr. 281-287).  These consisted of Landry's one-page, check-box psychological evaluation, five one-page progress notes, and one paragraph of Landry's notes from a conversation with Barnes' mother.  [Tr. 281-287.]  As discussed, *supra,* Nurse Landry's assessment in these reports was fairly uniform on all but Barnes' mood.   [Tr. 282, 283, 284, 287 (All reporting "Affect Normal.  Speech normal rate and rhythm.  Thoughts linear and reality based.").]  Barnes mood did shift in these assessments but the shift was not unique to only these medical records as Nurse Landry's earlier provided assessments also indicated that his mood shifted from "good" to "stable."  [Tr. 266, 625, 266, 267.]  Second, unlike in *Blakely*, Nurse Landry was not Barnes' treating source but, as discussed earlier, an "other source" whose opinion does not receive the same deference as treating source's opinion.  Finally, while the ALJ did not comment on the fact that Drs. Gilson nor Demaree lacked access to these seven pages of Nurse Landry's notes, it is clear from his decision that he considered the facts contained in those records "before giving greater weight to [Gilson and Demaree's opinions, which are] not 'based on a review of a complete case record.' " *Blakley*, 581 F.3d at 409.  The ALJ's opinion discusses the contents of the seven-pages not turned over Dr. Gilson, and, as discussed *supra,* the ALJ did not believe that Landry's conclusions in her psychological evaluation regarding Barnes' ability to tolerate workplace stress were supported by her own clinical notes.  [Tr. 16.]

Barnes also refers the Court to *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 368 (6th Cir. 2013), <u>reh'g denied</u> (May 2, 2013), a factually similar case which he believes demonstrates that remand is appropriate.  In *Gayheart,* the Claimant was also bipolar and suffered from many

of the same symptoms that Barnes suffers from, including workplace stress, and anxiety. *Id*. at 369. One of the primary issues considered by the Sixth Circuit in *Gayheart* was "whether the ALJ appropriately deferred to the opinions of [a non-examining expert and a psychologist/consultative examiner] over the opinion of [the claimant's treating physiatrist] in…determingint the limitations on [the claimant's] residual functional capacity (RFC)…" *Id*. 375. Ultimately, the Court held that the ALJ erred by failing to weight the medical opinions in accordance with 20 C.F.R. § 404.1527, specifically, noting that the ALJ failed to provide good reasons for discounting the treating psychiatrist's opinion, and failed to identify the substantial evidence that was thought to be inconsistent with the treating physician's opinion. *Id.* at 377. Barnes failed to mention one factual distinction that renders *Gayheart* inapposite: Nurse Landry is not a treating physician so her opinion was not entitled to the deference that the treating physician's opinion was entitled in *Gayheart,* nor did the ALJ need to provide "good reasons" for discounting her opinion as she was not a treating source.

The ALJ was bound to consider Landry's opinion, as the regulations require that the Commissioner consider all relevant evidence that they receive. 20 C.F.R. § 404.1527(b); § 416.927. The ALJ fulfilled this duty. While Barnes may disagree with the ALJ's conclusions, it is the responsibility of the ALJ, not the claimant, to weigh the evidence of record. *See Bradley,* 862 F.2d at 1227 ("Although the record is replete with inconsistent medical reports and [the Claimant's] own conflicting testimony, we acknowledge the discretion vested in the ALJ to weigh all the evidence.") The ultimate determination regarding a claimant's RFC is reserved for the ALJ. 20 C.F.R. §404.1545(e); *Saylor v. Astrue*, 2009 WL 310911, at *2 (E.D. Ky. Feb. 9, 2009); *White v. Comm'r of Soc. Sec. Admin.*, 2013 WL 4817673, at *751 (N.D. Ohio Sept. 10, 2013); 20 C.F.R. § 404.1527(d)(2); 416.927(d)(2) ("Although we consider opinions from

medical sources on issues such as … your residual functional capacity …the final responsibility for deciding these issues is reserved to the Commissioner.")

### III

Thus, after reviewing the record, the Court finds that the ALJ's decision is supported by substantial evidence. **ACCORDINGLY**, the Court being sufficiently advised, it is hereby ordered as follows:

(1) Barnes' motion for Summary Judgment [R. 29] is **DENIED**.

(2) The Commissioner's Motion for Summary Judgment [R. 30] is **GRANTED**.

(3) A judgment will be entered contemporaneously herewith**.**

This 30th day of March, 2015.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge